## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

RHONDA HOGELAND,

           Plaintiff,

vs.

VILLAGE OF ORLEANS, et al.,

           Defendants.

4:17-CV-0411

MEMORANDUM AND ORDER

In October 2016, the plaintiff, Rhonda Hogeland, was the duly appointed clerk for the village of Orleans, Nebraska, when her employment was terminated by a majority vote of the five-member village Board of Trustees. The three individual defendants voted together as the Board's majority. The plaintiff challenges her termination under state and federal law.

Under state law, the plaintiff essentially alleges that her dismissal was in violation of the Nebraska Open Meetings Act, Neb. Rev. Stat. § 84-1407 *et seq*. Under federal law, the plaintiff alleges that her dismissal contravened her right to due process and was an act of retaliation for speaking out on matters of public concern. In addition, she alleges that her termination, and statements and communications made by the named defendants, were "false malicious and scandalous," causing her further damage.

## I. STANDARD OF REVIEW

Summary judgment is proper if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). Rule 56 also allows the

Court to grant summary judgment as to some issues but not as to others. *See* Fed. R. Civ. P. 56(a).

On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the evidence are jury functions, not those of a judge. *Id*.

## II. BACKGROUND

The evidence submitted in support and in opposition to the defendants' motion for summary judgment, when viewed in the light most favorable to the plaintiff, shows the following.

The plaintiff held two jobs for the Village of Orleans. In the summer she managed the village swimming pool. Filing 25-3 at 7. Additionally, in October 2011, she was appointed to fill the position of village clerk. Filing 25-3 at 12. She had been the "fill-in clerk" for several years before permanently assuming those duties. Filing 25-3 at 12-13. Defendant Mary Ann Lehmer asked the plaintiff to apply for the position when the previous clerk resigned, and Lehmer was responsible for training her for the position once she had been appointed. Filing 25-3 at 13-14. Her relevant job duties included preparing the agenda for Board meetings, posting notice of the meetings, attending the meetings, and recording the meeting minutes, which would later be published. Filing 25-3 at 14. The plaintiff also believed her duties included staying up to date on open meeting rules and advising the Board on those rules. Filing 25-3 at 37-38.

The plaintiff considered the chairperson of the village Board of Trustees to be her supervisor. Filing 25-3 at 15-17. Lana Dake was the board chairperson when the plaintiff was fired. Filing 25-1 at 4. The Board of

Trustees would normally meet once a month, usually the second Tuesday of the month. Filing 25-3 at 18. The plaintiff's employment was by appointment, and her reappointment was addressed each year at the December Board meeting. Filing 25-3 at 19.

On or about October 3, 2016, defendants Lehmer, David Snodgrass, and Bruce Werner decided to call a special meeting of the Board. Filing 25-2 at 31-35. Although Lehmer was a trustee and not the village clerk, she prepared a notice titled "SPECIAL MEETING." Filing 25-2 at 34-35; filing 25-4 at 6. The notice reported that the special meeting of the board would be held on October 4, 2016 at 6:00 p.m., and the agenda consisted of one item, "Personnel issues." Filing 25-4 at 6. The notice did not inform the public where the meeting would be held. Filing 25-4 at 6. Lehmer testified that she posted the notice at the post office, the bank, and the village hall "at or before 6 p.m." on October 3. Filing 25-2 at 35-36; filing 18-2 at 2. Lehmer, Snodgrass and Werner did not discuss the need for a special meeting with Dake. Filing 25-1 at 14-16.

Previously, the plaintiff had requested and received approval from Dake to use two days of vacation on October 3 and 4. Filing 25-1 at 10. Although on vacation, the plaintiff was at home in Orleans each morning and each evening. Filing 25-3 at 43. Around ten o'clock on the morning of October 4, the plaintiff received a telephone call from Dake asking if she knew anything about the meeting that had been scheduled for that evening and what it was about. Filing 25-3 at 48-49. The plaintiff told Dake that she did not know anything about the meeting. Filing 25-3 at 48-49.

Dake attended the October 4 meeting, and described it as very hostile toward the plaintiff. Filing 25-1 at 18. The only matter discussed at the meeting was the plaintiff's job performance, which Lehmer, Snodgrass and Werner found to be in violation of the village employee handbook. In addition,

the plaintiff was accused of acting without board approval when she placed an advertisement in the local newspaper hoping to hire a fill-in clerk. Filing 25-1 at 19-20; filing 25-4 at 2.

Werner moved to terminate the plaintiff's employment, which was seconded by Lehmer. Filing 25-4 at 2. The vote on the motion was 3 to 1 for the plaintiff's termination. Filing 25-4 at 2. Werner, Lehmer, and Snodgrass voted for the motion; Trustee DaLoy Veldhouse voted no. Filing 25-4 at 2. For reasons that are not explained in this record, Dake was not allowed to vote on the motion terminating the plaintiff's employment. Filing 25-1 at 17. Dake testified that she would not have voted to terminate the plaintiff's employment, and that the plaintiff had done an excellent job for the five years she was clerk. Filing 25-1 at 41, 15.

The plaintiff wrote to the Nebraska Attorney General alleging that the Board violated the Open Meetings Act, but in a letter dated April 13, 2017, an Assistant Attorney General informed the plaintiff that the Attorney General's office declined to prosecute the Village Board of Trustees. Filing 18-5 at 3-6. Thereafter, the plaintiff filed this case in state court, and the defendants removed it to this Court. Filing 1; filing 1-1.

## III. DISCUSSION

At the outset, it is important to observe that in the defendants' motion and opening brief, no argument was presented regarding the named defendants and the village as separate and distinct actors. Instead, the defendants' motion and briefing seemed to assume, or represent, that the conduct of one named defendant was also conduct of the other defendants. Arguably, examining the conduct of the defendants collectively and not individually would be contrary to law. See, e.g., *White v. Pauly*, 137 S. Ct. 548, 552 (2017). Additionally, defendants appear to assume, or concede, that the

individual defendants had the authority to act as the village's policymakers for the purposes of *Monell* liability, and that the named defendants could exercise this policymaking authority individually or collectively.

### 1. PLAINTIFF'S STATE LAW CLAIM: VIOLATION OF THE NEBRASKA OPEN MEETINGS ACT (NEB. REV. STAT. § 14-1407 ET SEQ).

The plaintiff argues that the meeting at which she was fired took place in violation of the Open Meetings Act. The Nebraska Legislature has declared that "[e]very meeting of a public body shall be open to the public in order that citizens may exercise their democratic privilege of attending and speaking at meetings of public bodies." Neb. Rev. Stat. § 84-1408. To effect the democratic privilege,"[e]ach public body shall give reasonable advance publicized notice of the time and place of each meeting by a method designated by each public body and recorded in its minutes." Neb. Rev. Stat. § 84-1411(1). The notice is required to "contain an agenda of subjects known at the time of the publicized notice" and the "[a]genda items shall be sufficiently descriptive to give the public reasonable notice of the matters to be considered at the meeting." *Id.*

A "meeting" is a defined term for the purposes of the Open Meeting Act. "Meeting means all regular, special, or called meetings, formal or informal, of any public body for the purposes of briefing, discussion of public business, formation of tentative policy, or the taking of any action of the public body." Neb. Rev. Stat. § 84-1409(2). A public body, however, "does not include subcommittees of such bodies unless a quorum of the public body attends a subcommittee meeting." § 84-1409(1)(b); *City of Elkhorn v. City of Omaha*, 725 N.W.2d 792, 805 (Neb. 2007). Thus, if a quorum of a public body meets for any of the purposes described in § 84-1409(2), such meeting is subject to the requirements of the Open Meetings Act.

There is evidence, when considered in the light most favorable to the plaintiff, that an informal meeting occurred in which a quorum of the Board of Trustees met to discuss the plaintiff's employment performance. The quorum consisted of the three named defendants.[1] That informal meeting was not a scheduled meeting of the Board and no notice or agenda was ever generated. As such, the public had no knowledge of this meeting and no opportunity to exercise their democratic privileges of attending and speaking. The evidence indicates that in this undisclosed meeting, the three named defendants made the decision on their own to hold the special meeting on October 4. The named defendants generated an agenda for the October 4 special meeting and posted notice with the agenda on their own. At the October 4 special meeting, the plaintiff's employment was terminated, purportedly, by a majority vote of the Board. Thus, there is evidence to support a conclusion that the three named defendants, acting as a quorum of the village Board of Trustees, violated the Open Meetings Act.

Moreover, there is evidence that the notice published by the three named defendants on behalf of the village did not comply with § 84-1411(1), which requires "reasonable advance publicized notice of the time and place of each meeting" and "[a]genda items . . . sufficiently descriptive to give the public reasonable notice of the matters to be considered at the meeting." Additionally, the plaintiff's briefs points out inconsistencies in Lehmer's testimony regarding when the notice was posted, filing 25 at 12-13, and it is apparent on the face of the notice that there is no indication as to where the meeting was to be held. Accordingly, the evidence in the record would support a conclusion

---

[1] "At all meetings of the village board of trustees, a majority of the trustees shall constitute a quorum to do business." Neb. Rev. Stat. § 17-205.

that the three named defendants acting pursuant to their duties as village board members violated the notice provisions of the Open Meetings Act.

Defendants argue that the Court should defer to the Nebraska Attorney General's opinion and disposition of the plaintiff's letter-complaint regarding the same Open Meetings Act violations that are the subject of this action, and cite *State v. Coffman* for the proposition that an Attorney General's opinion is entitled to deference. Filing 19 at 7 (citing *State v. Coffman*, 330 N.W.2d 727, 728 (Neb. 1983)). But the mechanism for enforcing the public's right to attend the meetings of public bodies is two-fold: § 84-1414(2) provides for enforcement of the Act by the attorney general and the county attorney, and § 84-1414(3) provides a private right of action for any citizen of this state. "Any citizen of this state may commence a suit in the district court of the county in which the public body ordinarily meets or in which the plaintiff resides . . . for the purpose of declaring an action of a public body void . . . ." Neb. Rev. Stat § 84-1414(3).

To defer to the Attorney General's decision to not pursue a citizen's complaint would have the effect of negating the clear authority for a citizen to pursue a private right of action. Moreover, the defendants' reliance on *Coffman* is misplaced. The letter declining to prosecute the Board of Trustees was not an Attorney General's opinion. But even if it were, an Attorney General's opinion "has no controlling authority on the state of the law discussed in it, and standing alone is not to be regarded as legal precedent or authority of such character as is a judicial decision." *Coffman*, 330 N.W.2d 727, 728 (1983).

Finally, in their reply brief, the defendants raised for the first time a claim that pursuant to Neb. Rev. Stat. § 84-1414(1), for plaintiff to obtain relief, the defendants' violation of the Open Meetings Act must be "substantial" since the plaintiff's suit was filed more than 120 days after the October 4 meeting. Filing 28 at 12-15. But claims raised only in a reply brief are ordinarily not

considered due to the fact that the opposing party is deprived of a chance to meaningfully respond. *Torgeson v. Unum Life Ins. Co. of Am.,* 466 F. Supp. 2d 1096, 1121 (N.D. Iowa 2006); *see also Dean v Searcey,* 893 F.3d 504, 510 (8th Cir. 2018). Accordingly, the Court will not consider the defendants' new argument.

## 2. PLAINTIFF'S FEDERAL CLAIMS
### (a) Plaintiff's Due Process Claims

To state a due process claim pursuant to 42 U.S.C. § 1983, "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of law." *Roe v. Humke,* 128 F.3d 1213, 1215 (8th Cir. 1997) (quoting *West v. Atkins,* 487 U.S. 42, 48 (1988)). The dispute in this matter concerns whether the plaintiff possessed a right secured by the Constitution and the laws of the United States. The defendants assert that the plaintiff did not have a protectable property interest in continued governmental employment as the village clerk or as the village's swimming pool manager.

In Nebraska, "when employment is not for a definite term, and there are no contractual or statutory restrictions upon the right of discharge, an employer may lawfully discharge an employee whenever and for whatever cause it chooses without incurring liability." *Neb. Pub. Emps. Local Union 251 v. Otoe County,* 595 N.W.2d 237, 249 (Neb. 1999). The plaintiff's employment as village clerk was authorized pursuant to Neb. Rev. Stat. § 17-208(1). Nebraska statutes also authorize removal of a village clerk from office. "The village clerk . . . shall hold office for one year unless removed by the chairperson of the village board of trustees with the advice and consent of the village board of trustees." § 17-208(4).

If the plain language of the statute is unambiguous, that language is conclusive absent clear legislative intent to the contrary. *Dowd v. United Steelworkers of Am.*, 253 F.3d 1093, 1099 (8th Cir. 2001). The phrase "[t]he village clerk . . . shall hold office for one year" is unambiguous. Village clerks are appointed for one-year terms. This understanding of the plain language in § 17-208(4) is consistent with the evidence in this record. The plaintiff testified on direct examination by defense counsel that she was appointed to her village clerk position on an annual basis. She was subject to reappointment at the Board's December meeting each year. The plaintiff agreed that she had no expectation of employment as the village clerk beyond December. Filing 25-3 at 19; *see Davis v. Vill. of Decatur*, No. 02-2459, 2003 WL 152327, at *1 (8th Cir. Jan. 23, 2003).

Thus, there is plainly a statutory restriction on the removal of a village clerk, in that a village clerk "shall hold office for one year unless removed." § 17-208(4). The issue then becomes what process is due a village clerk prior to removal. Even assuming a clerk may be removed for any reason, the process for removal is for the chairperson of the board to authorize and initiate the removal process, "with the advice and consent of the village board of trustees." Id. The evidence in the record indicates that Dake did not initiate the plaintiff's removal as village clerk, and instead, she opposed it and was not allowed to vote on the motion to terminate the plaintiff's employment. Filing 25-2 at 15, 17, 41. Section 17-208(4) does not allow a majority vote of a board of trustees to initiate and authorize the removal of a village clerk *sua sponte*.

Accordingly, the plaintiff was not an at-will employee, and had a protected property interest in her employment for the rest of her appointed term. On the other hand, there is no evidence or authority that the plaintiff had a protected property interest in her job as the village's swimming pool

manager. In the absence of a protected property interest in employment, an employee may be discharged for any reason whatever. *Neb. Pub. Emps. Local Union 251*, 595 N.W.2d at 249. Defendants are entitled to summary judgment regarding the plaintiff's due process claim concerning termination as the swimming pool manager.

(b) Due Process Injury to Reputation.

"[I]njury to reputation alone is not sufficient to state a § 1983 claim." *Jones v. McNeese*, 746 F.3d 887, 898 (8th Cir. 2014) (citing *Paul v. Davis*, 424 U.S. 693, 712 (1976)). However, a § 1983 claim may be found if the governmental employer, in connection with the termination of employment, "makes a charge which might seriously damage the employee's standing and reputation in the community." *Jones v. McNeese, supra.* "For a defamatory statement to be actionable under § 1983, it must go beyond 'alleging conduct . . . that fails to meet professional standards.'" *Id.* (quoting *Raposa v. Meade Sch. Dist. 46-1*, 790 F.2d 1349, 1354 (8th Cir. 1986)). "Rather, the statement must 'damage[ ] a person's standing in the community or foreclose[] a person's freedom to take advantage of other employment opportunities.'" *Id.* "'The requisite stigma has generally been found in cases in which [a governmental official] has accused the [plaintiff] of dishonesty, immorality, criminality, racism, or the like.'" *Jones v. McNeese, supra* (quoting *Shands v. City of Kennett*, 993 F.2d 1337, 1347 (8th Cir. 1993)).

There is evidence, although scant, that a named defendant or the named defendants acting together, represented that the plaintiff allegedly stole or embezzled, or misappropriated village funds. In her deposition, Lehmer was asked why it was thought a special meeting needed to be called to address the plaintiff's employment. Among the reasons she gave was "there was a money bag missing." Filing 25-2 at 40. In addition, defense counsel questioned the

plaintiff regarding the allegation in her complaint that the defendants made "false and defamatory, stigmatizing statements" about her. The plaintiff testified that the evidence of such statements included the fact that the defendants contacted the state auditor's office and requested an audit because they believed that she had embezzled money. Filing 25-3 at 55-56. Although there could be foundational issues at trial with the plaintiff's assertion, no objection was raised in her deposition testimony. It is certainly possible for the plaintiff to adduce evidence of a complaint by the village or the named defendants to the state auditor at trial.

A charge that the plaintiff stole or embezzled village funds is certainly one alleging dishonesty, immorality or criminality. It is not merely a statement that the plaintiff failed to meet professional standards of employment. Accordingly, there is evidence which may be adduced at trial that would allow a jury to conclude that the plaintiff's termination, coupled with statements made by a defendant or the defendants acting in concert on behalf of the Village, damaged the plaintiff's reputation and standing in the community.

(c) Plaintiff's First Amendment Claim.

The plaintiff alleged that her termination was motivated by her "speaking out on matters of public concern" regarding what the plaintiff believed were improper actions taken by the Board and the individual defendant trustees. The actions the plaintiff points to were advising the trustees that they could not take compensable jobs with the village and advising the Board that it could not discuss early closing of the village swimming pool when it was not an item on the Board's agenda.

"When a public employee speaks on a matter of public concern pursuant to [her] official duties, the speech is *unprotected* against employer retaliation." *Lyons v Vaught*, 875 F.3d 1168, 1173 (2017). The evidence in the record

indicates that the plaintiff was advising the Board of Trustees consistent with her job duties and responsibilities. Even if the subject matter the plaintiff addressed with the Board was on matters of public concern, the evidence indicates that plaintiff was still advising the Board pursuant to her duties as the village clerk. The defendants are entitled to summary judgment regarding the plaintiff's First Amendment claim.

## IV. CONCLUSION

The Court will grant the defendants' motion for summary judgment in part and deny it in part. Specifically, the Court will dismiss the plaintiff's First Amendment claim and her due process claim regarding her employment as the village swimming pool manager. Summary judgment is denied regarding the plaintiff's Nebraska Open Meetings Act claim, due process claim regarding her employment as village clerk, and due process injury to reputation claim.

IT IS ORDERED:

1.     Defendants' motion for summary judgment (filing 17) is granted in part and denied in part as set forth above.

Dated this 3rd day of October, 2018.

BY THE COURT:

John M. Gerrard
United States District Judge